**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| ZOO II MUSIC, UNIVERSAL MUSIC CORP., AIRSTREAM DREAMS MUSIC, ANTHEM MUSIC PUBLISHING II, COYOTE HOUSE MUSIC, UNIVERSAL MUSIC CORP. d/b/a ALMO MUSIC, and W CHAPPELL MUSIC CORP. d/b/a WC MUSIC CORP., | ) ) ) ) ) ) ) | Civil No. 3:26-cv-797 |
| Plaintiffs, | ) ) | **COMPLAINT FOR COPYRIGHT INFRINGEMENT** |
| vs. | ) ) | **(17 U.S.C. § 101, et seq.)** |
| SPOON RIVER MEDIA, LLC and MATTHEW MOORE, | ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs, Zoo II Music, Universal Music Corp., Airstream Dreams Music, Anthem Music Publishing II, Coyote House Music, and W Chappell Music Corp. d/b/a WC Music Corp., (collectively, "Plaintiffs") by their undersigned attorneys, allege as follows:

**NATURE OF THE ACTION**

1.     This action alleges six (6) counts of willful copyright infringement arising out of the unauthorized public performance of Plaintiffs' copyrighted musical compositions via radio broadcast on commercial radio stations owned and operated by the defendants, Spoon River Media, LLC ("Spoon River") and Matthew Moore (together with Spoon River, the "Defendants"). Defendants' radio stations employ "music" formats, broadcasting music on a nearly continuous basis. Nevertheless, Defendants have been operating without a license from Plaintiffs' performing rights organization, the American Society of Composers, Authors and Publishers ("ASCAP"),

since November 2, 2023, when ASCAP duly terminated Defendants' then-existing license for default in payment of license fees.  As a result, for more than two years, Defendants have not had permission from ASCAP to broadcast performances of its members' copyrighted music.  Nor have Defendants ever obtained permission to broadcast such performances directly from ASCAP's music publisher members who own the copyrights in the music licensed by ASCAP.

2.     Federal copyright law is clear: radio station owners must obtain permission from copyright owners *before* broadcasting performances of their music over the airwaves.  Defendants had every opportunity to obtain an ASCAP license that would have granted them the requisite permission and that would have ensured the payment of fair compensation to the music creators, including Plaintiffs, whose music is the very lifeblood of the commercial radio industry.  Instead, by willfully infringing upon the rights of Plaintiffs and other ASCAP members, Defendants are causing direct harm to Plaintiffs and countless other music-creator members of ASCAP whose music is being broadcast over Defendants' radio stations.  Defendants' egregious misconduct must not be condoned.

## THE PARTIES

3.     The Plaintiffs named in Column 2 of Schedule A* are music publishers, own valid copyrights in the works listed in corresponding Column 3, and are properly joined in this complaint under Rule 20 of the Federal Rules of Civil Procedure.

---

* SCHEDULE A, annexed to the Complaint, sets forth in summary form the allegations hereinafter made regarding Defendants' acts of infringement.

2

4. Defendant Spoon River is a limited liability company organized under the laws of Indiana with a principal office located at 1700 Lincolnway Pl., La Porte, IN 46350.

5. Spoon River is the FCC licensee of commercial radio stations WLOI-AM, located in La Porte, Indiana; WCOE-FM, located in La Porte, Indiana; WILP-FM, located in Cuba, Illinois; and WBYS-AM, located in Canton, Illinois (collectively the "Spoon River Stations").

6. Defendant Matthew Moore is an individual who resides and/or does business in the State of Indiana.

7. Mr. Moore is a managing member and/or owner of Spoon River.

## JURISDICTION AND VENUE

8. This is an action arising under the Copyright Act, 17 U.S.C. § 501.

9. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

10. Defendants are subject to personal jurisdiction in Indiana because they reside and/or do business in the state.

11. Venue is proper pursuant to 28 U.S.C. § 1400(a) because the Defendants reside and/or do business in this District. Venue is also proper under 28 U.S.C. § 1391(b)(1) because all Defendants are residents of Indiana and § 1391(b)(2) because Defendants' infringing conduct occurred in this district.

## DEFENDANTS' OWNERSHIP AND OPERATION
## OF THE SPOON RIVER RADIO STATIONS

12. Defendants jointly own and operate radio station WLOI-AM for commercial purposes. WLOI-AM broadcasts over frequency 1540 AM and serves the La Porte, Indiana region.

3

It is advertised as operating on a "rock" music format (*e.g.*, playing mainstream "rock and roll" music).  In connection with the operation of WLOI-AM, Defendants publicly perform musical compositions, and/or cause musical compositions to be performed publicly, by means of radio broadcast.

13.    Defendants jointly own and operate radio station WCOE-FM for commercial purposes.  WCOE-FM broadcasts over frequency 96.7 FM and serves the La Porte, Indiana region. It is advertised as operating on a "country music variety" format (*e.g.*, playing today's country music as well as "hit" songs from earlier decades).  In connection with the operation WCOE-FM, Defendants publicly perform musical compositions, and/or cause musical compositions to be performed publicly, by means of radio broadcast.

14.    Defendants jointly own and operate radio station WILP-FM for commercial purposes.  WILP-FM broadcasts over frequency 98.1 FM and serves the Cuba, Illinois region.  It is marketed as operating on an "80's to Today" format (*e.g.*, playing "popular" music spanning decades from the 1980s through the present).  In connection with the operation WILP-FM, Defendants publicly perform musical compositions, and/or cause musical compositions to be performed publicly, by means of radio broadcast.

15.    Defendants jointly own and operate radio station WBYS-AM for commercial purposes. WBYS-AM is marketed as operating on a "full-service country" format which appears to mean that it features local news, talk, and sports content with occasional performances of country music.  Although news/talk radio stations typically do not feature regular public performances of music, musical compositions are sometimes included in the programming broadcast on such stations (*e.g.*, as "theme songs" for particular radio programs, as background

4

music, incorporated in commercials, or as "music cues").  Because ASCAP's members include songwriters and lyricists who compose such music, it is a virtual certainty that ASCAP's members' music is being performed publicly as part of the programming broadcast by radio station WBYS-AM.

16.    As the owners and operators of the Spoon River Stations, Defendants have the right and ability to control the content that is broadcast on the stations, including the right and ability to control whether the stations broadcast public performances of copyrighted musical compositions.

17.    Defendants Spoon River and Moore each derive a direct financial benefit from the public performance of musical compositions on the Spoon River Stations through, among other things, selling advertising spots to local and national advertisers to be incorporated in radio broadcasts on those stations.

**ASCAP'S LICENSING OF THE RADIO INDUSTRY**
**AND THE SPOON RIVER RADIO STATIONS**

18.    Each of the Plaintiffs is now, and at the times of the alleged infringements was, a member of ASCAP. ASCAP's more than one million songwriter, composer and music publisher members are the creators and owners of the copyrights in more than 20 million musical works. Each ASCAP member grants to ASCAP a non-exclusive right to license the performing rights in that member's copyrighted musical compositions, including the right to perform those compositions publicly via radio broadcasting.

19.    For decades, ASCAP—on behalf of its members—has negotiated uniform license agreements with a committee comprised of broadcasters representing thousands of commercial radio stations.  The negotiated, industry-wide license agreement then becomes the *de facto* ASCAP

5

license for the great majority of commercial radio stations for the duration of the term of the license agreement.

20.    The current industry-wide agreement for the commercial industry has been in effect since July 1, 2025 (the "2025 ASCAP Radio License Agreement").  Prior to that, for the period between January 1, 2022 and June 30, 2025 (the "Interim License Period"), radio stations had been operating pursuant to an "interim license" arrangement with ASCAP.  During the Interim License Period, the terms of the prior industry-wide ASCAP license agreement, covering the term from January 1, 2017 through December 31, 2021 (the "2017 ASCAP Radio License Agreement"), were extended on an interim basis.

21.    Like the owners and operators of thousands of other commercial radio stations operating in the United States, Defendants were at one time licensed to perform ASCAP's members' music on the Spoon River Radio Stations.

22.    However, by in or around early 2023, Defendants had become seriously delinquent in payment of the license fees owed to ASCAP under the 2017 ASCAP Radio License Agreement. As a result, ASCAP licensing and legal representatives contacted Defendants, including Matthew Moore, personally, in efforts to address the Spoon River Stations' delinquencies and attempt to bring their accounts current.

23.    Throughout 2023 ASCAP made repeated efforts to reach Mr. Moore and hopefully resolve the issue of Defendants' substantial delinquencies.  ASCAP's communications to Mr. Moore, sent via Federal Express and email, explained to Defendants that their failure to pay ASCAP fees constituted a material breach of the terms and conditions of the Spoon River ASCAP

6

license.  ASCAP also reminded Defendants that their failure to pay ASCAP fees was causing direct harm to ASCAP's songwriter, composer, and music publisher members.

24.     Unfortunately, Defendants ignored ASCAP's outreach, and Spoon River never took the steps necessary to cure its material breaches and default.  As a result, ASCAP duly terminated Spoon River's ASCAP license, effective as of November 2, 2023 (the "Date of Termination").

25.     Even after the Date of Termination, ASCAP made additional attempts to resolve this matter without resort to litigation.  Unfortunately, Defendants ignored all such attempts and have made no effort to take the steps necessary to reinstate the Spoon River Stations' ASCAP licenses.

26.     As a result, Defendants have been operating the Spoon River Stations without an ASCAP license since the Date of Termination.  Since that date, they have knowingly and willfully continued to broadcast public performances of ASCAP's members' music without permission and without compensating ASCAP's members for such performances.

**DEFENDANT'S INFRINGING**
**<u>PERFORMANCES OF PLAINTIFFS' WORKS</u>**

27.     Plaintiffs have obtained evidence that Defendants have routinely continued to broadcast public performances of ASCAP's members music on the Spoon River Radio Stations without authorization since the Date of Termination.  Plaintiffs' copyrighted musical works, listed on SCHEDULE A to the complaint, are just a representative sample of the dozens, if not hundreds, of songs in the ASCAP repertory that have been performed without authorization by Defendants, as evidenced by analysis of recordings ASCAP obtained from a third-party radio taping service.

7

28.     The original musical compositions listed in Column 3 of SCHEDULE A to the Complaint were performed without authorization on the dates and stations indicated in Column 9.

29.     The original musical compositions listed in Column 3 of SCHEDULE A were created and written by the individuals listed in corresponding Column 4.

30.     The original musical compositions listed in Colum 3 were published on the dates stated in Column 5, and since their respective dates of publication have been printed and published in strict conformity with Title 17 of the United States Code.

31.     The Plaintiffs named in each of the six (6) causes of action, as laid out in SCHEDULE A, including their predecessors in interest, if any, complied in all respects with Title 17 of the United States Code, secured the exclusive rights and privileges in and to the copyright of each composition listed in Column 3, and received from the Register of Copyrights a Certificate of Registration, identified as set forth in Column 6.

32.     The original musical compositions named in causes of action 5 and 6 are now in their renewal term of copyright, secured by due filing of an application for renewal of copyright in the office of the Register of Copyrights. The Register of Copyrights thereupon issued Certificates of Registration of the respective claims to the renewal of copyrights in the names of those claimants listed in Column 7. The dates and identification numbers of such certificates are set forth in Column 8.

33.     At the times of the acts of infringement complained of, the Plaintiffs listed in Column 2 of SCHEDULE A owned—and continue to own—valid copyrights in the musical works listed in corresponding Column 3.

8

34.     The copyrighted works listed in Column 3 of SCHEDULE A are 100%-owned and/or controlled by ASCAP's members.  As a result, no other U.S.-based performing rights licensing organization has the right to license public performances of the listed works.

35.     At the time of the acts of infringement complained of, Defendants were aware that their radio stations were not licensed by ASCAP.

36.     At the time of the acts of infringement complained of, Defendants did not have permission from Plaintiffs—or anyone acting on Plaintiffs' behalf—to publicly perform Plaintiffs' musical compositions, whether by means of radio broadcast, or any other means.  Yet, Defendants did nothing to prevent the public performances of Plaintiffs' musical works on which this action is based.

37.     At all relevant times Defendants have had—and continue to have—the right and ability to supervise and control the activities undertaken in connection with the operation of the Spoon River Stations, including the right and ability to supervise and control the public performance of music by such stations.

38.     At all relevant times, Defendants have received—and continue to receive—a direct financial benefit from the public performance of music on the Spoon River Stations.

WHEREFORE, Plaintiffs pray:

I.     That Defendants and all persons acting under the direction, control, permission or authority of Defendants be enjoined and restrained preliminarily and permanently from publicly performing and/or causing or permitting the public performance of Plaintiffs' copyright music, or any other musical compositions in the ASCAP repertory, by means of radio or digital broadcast over the Spoon River Stations.

9

II.     That Defendants be decreed to pay such statutory damages for copyright infringement as to the Court shall appear just, as specified in 17 U.S.C. §§ 504(c)(1), namely, not more than Thirty Thousand Dollars ($30,000.00) nor less than Seven Hundred And Fifty Dollars ($750.00) for each of the six (6) acts of infringement set forth herein.

III.    That Defendants alternatively be decreed to pay such statutory damages for willful copyright infringement as to the Court shall appear just, as specified in 17 U.S.C. §§ 504(c)(2), namely, not more than One Hundred Fifty Thousand Dollars ($150,000.00) nor less than Seven Hundred And Fifty Dollars ($750.00) for each of the six (6) acts of infringement set forth herein.

IV.     That Defendants be decreed to pay the costs of this action and that a reasonable attorneys' fee be allowed as part of the costs under 17 U.S.C. § 505.

V.      For such other and further relief as may be just and equitable.

Respectfully submitted,

*June 8, 2026*
Dated

*/s/ Phil Isenbarger*
Phil Isenbarger, No. 5548-49
Meaghan K. Haller, No. 29323-53
DENTONS BINGHAM GREENEBAUM LLP
2700 Market Tower
10 West Market Street
Indianapolis, IN 46204
(317) 635-8900
(317) 236-9907 (fax)
Phil.isenbarger@dentons.com
Meaghan.haller@dentons.com

10